All right, our second case this morning is 24-6026, United States v. Coulter. Thank you, Your Honor, and may it please the Court, my name is John Boland of the firm of Boland & Schall, appearing on behalf of Defendant Jermaine Coulter, Sr. The government failed to meet its burden of preponderance of the evidence in this case for restitution under the TVPRA, the Trafficking Victims Protection Reauthorization Act, for two reasons. First, because it failed to meet the but-for causation requirement that this Court pointed out is required under the TVPRA in the Anthony line of cases discussed in the brief. And secondly, even if there was but-for causation here, there was no basis by which the District Court could shorten the timeframe for certain restitution from the lifetime restitution that was discussed by the expert, Dr. Massar, in this case, to only 10 years. There's simply no basis for that decision. How much do, let's go to issue number two first, how much, how closely does the District Court have to tether its timeframe to the testimony? I mean, isn't that the business that the District Court's in? It listens to the testimony and it says, you know what? There's a lot of good stuff in here, but I don't buy the idea that it's a lifetime worth of restitution here. And looking at this evidence, it seems to me that there would be 10 years worth. And he has some reasons why, like he goes with numbers that relate to two years of counseling, three years of this, cuts some things out because they were pre-existing, I mean, doesn't the District Court have some leeway to, you know, at some point you've got to make a judgment call. Why didn't the District Court have the ability to do that? There's no question that the District Court was entitled to believe some evidence, discount other evidence, and make its own determination based on the evidence as to what restitution would be appropriate in the case. But there aren't any reasons in the record why the District Court could choose 10 years of restitution for these categories of treatments as opposed to a lifetime. This was the subject of expert testimony. The District Court is not a psychologist, and it doesn't know how long these types of interventions would need to be applied in order to resolve the troubles, you know, of these victims. And so once Dr. Massar had testified that these victims would need a lifetime of therapy and medications, and then Dr. Massar later testified that that was actually overly speculative, there was nothing in the record for the District Court to rely on to say that any lesser time frame would not be overly speculative. Nobody asked Dr. Massar, okay, would 15 years, are you certain that that would be enough, or 10 years? None of that evidence was before the court. So if the court was going to conclude that Dr. Massar's testimony about a lifetime could not be trusted, there's nothing else that the court could rely on as to that piece. Now, there's no doubt that the court made decisions on other factors within the restitution decision that it did have authority to do so. Judge Carson might be referring to the decision that certain ADHD medications were not appropriate because that ADHD diagnosis preexisted the criminal acts at issue here. That's the kind of decision that the court has a basis for in the evidence. But going from a lifetime of therapy and medications down to 10 years, there's simply no basis for that in the evidence. Did I read your challenge, though, to be that the victims here were not eligible for any restitution at all? In other words, your argument was restitution should be zero. Is that right? Yes, Your Honor. That's the primary argument. Okay. And then you also wrote in your opening brief that no party had the opportunity to object to the district court making the decision and exercising discretion to say that 10 years is more appropriate. But why is that? Because as I read the record, it seemed to me the district court engaged in robust proceedings to try to determine the restitution amount and that your client's position was, well, the answer is zero, but didn't really, you know, by doing that, didn't sort of afford himself the opportunity to make any arguments for anything other than zero. But I just, I'm not tracking why you're arguing it's error that the parties weren't afforded an adequate opportunity to argue for an amount. Well, so certainly the defendant was afforded an adequate opportunity to argue that but for causation wasn't met and that restitution should be zero. But nobody had ever argued for therapy and medications to be anything other than lifetime. So the choices on the table for the court were lifetime or zero. And so there was no indication that the court might just come up with a timeframe itself without any expert witness testimony about a different timeframe that it would impose as restitution in the case. And that's why I think the government has not challenged, you know, our argument that we didn't have an opportunity below to make any argumentation on that 10-year timeframe. Was it the recommendation 10 years for group therapy? Yes, Your Honor, and that was for one specific diagnosis of PTSD. And that recommendation came from whom? That was from Dr. Massar as well. Yeah, why wouldn't that, why wouldn't the restitution, the 10-year restitution order really be rationally tethered to the group therapy that it imposed? Just seems like the district court was, you know, making a package deal there when it decided to approve the 10 years of therapy. Perhaps that is why the district court made its decision, but I don't think that it was justified based on the evidence that 10 years of group therapy was for a specific diagnosis of PTSD. And the doctor, Dr. Massar, did testify that as to PTSD, that it should be resolved within 10 years. But the other diagnoses, the other mental health issues that the victims would suffer would require lifetime therapy and medications. And that's the decision that the district court, you know, discounted and did not go with. And so. So is your issue basically then that the, like, almost limited to the mood medication because everything else seems to have a tie to Dr. Massar's testimony? It's the ongoing individual therapy, which is weekly. And on the court's little charts, which are presented at the attachments to our opening brief, pages 32 and 35, that's $60,000 for each of the victims. And it's called ongoing individual therapy. Right. But if you look at the detail of the original recommendation for DOE number two, at least, the original recommendation is 61 years at $50 a week at $150 an hour. And the district court said, no, I think eight years is going to be appropriate on that for 50 weeks a year, $150 an hour. Is it the eight years that you quibble with there? Yes, Your Honor. That's the 10-year decision in that line item. And then also the medications, as Judge Carson mentioned, which was $50,000 in the court's line item at attachment page 32 for DOE one and $40,000 at attachment page 35 for DOE two. And then also the psychiatrist, which is eight years, $3,200. Those are the specific line items that we would say there wasn't a basis for in the record for the district court's decision. Counsel, can I ask you about eligibility again? And Dr. Massar, my understanding, is the same expert the government called in the Anthony cases as well. Yes. Your argument is that the government has not met its burden to satisfy Anthony II's but for causation standard. But didn't Dr. Massar's evidence here take Anthony II into account? And didn't he testify that DOE's one and two or two and three, that they did suffer specific harms that was directly related to Mr. Coulter, which was different than Anthony where there were multiple defendants. I think there may have been seven on that indictment who had engaged in similar conduct. Here there were two. But didn't Dr. Massar specifically point to your client as causing the harm for these two individuals? And doesn't that meet the but for causation standard? No, Your Honor. I don't believe it does. Dr. Massar did say that the conduct of the defendant was a cause of the mental health issues of DOE's one and two. But Dr. Massar failed to differentiate other causes of those issues from the defendant's conduct at issue in the case. And that's one of the key components of the Anthony cases, is differentiating between different harms. Because for but for causation, the court is required to take away causes and then assess whether or the expert witnesses testimony is required to take away causes and then assess whether the result still obtains with the remaining causes. And that's the part of Dr. Massar's testimony that was deficient here. I mean, he sort of did that, didn't he? Because he said, yeah, I acknowledge that there was existing trauma here, but Coulter exacerbated what was already existing. I mean, isn't that separating them out saying, yes, there was existing? I'm talking about exacerbation. Your Honor, I don't believe that's enough because he did not reach the ultimate conclusion that only the exacerbation would have caused all of the mental health issues and therefore caused all the restitution that Dr. Massar was recommending. Would there be any situation in your mind where if somebody already had some existing mental trauma, that an exacerbation could then be the subject of restitution? I mean, how's someone ever going to? I mean, it sounds from your argument like that could never happen. Certainly, I'm sure that there's a world in which an expert witness can differentiate between the different harms. It's just that Dr. Massar admitted that he didn't even try to do that here. He said that he didn't attempt to differentiate between the prior trauma that the victims had suffered and compare that to what happened in the conduct at issue in the case. And that's what I think is deficient here under the Courts of Anthony cases. If there are no further questions at this time, I'll reserve the remainder of my time for rebuttal. You may, counsel. Thank you. Thank you. Let's hear from the government. Good morning, Your Honors. May it please the Court. Assistant United States Attorney Jackson Eldridge on behalf of the United States. Front and center in this case is this Court's decisions in Anthony 1 and Anthony 2. The factual circumstance in this case is much different than what the court found error in Anthony, in the Anthony decisions. A jury found Mr. Colter guilty of engaging in sex trafficking as to does 1 and 2 and engaging in a separate count of sex trafficking as to Doe 1. There's no dispute in this case. These are egregious crimes that cause severe harm to both Doe 1 and Doe 2. There's also no dispute that Doe 1 and Doe 2 are experiencing severe trauma as a direct result of what happened by Mr. Colter, by his direct actions and what he did in sex trafficking them. That is very different than what this court analyzed in the Anthony decisions. Mr. Anthony was a John. He abused the victims, the victim, Anthony for an evening. And the expert report submitted by the government in the Anthony cases addressed harms that were caused by multiple sex traffickers and multiple Johns over a course of conduct. And what this court found as error in those cases was that the government's experts did not differentiate between the harms that were presented to the court for the purpose of receiving restitution. So in those cases, the analysis was not contained to a single defendant or to a single course of conduct as it is for Mr. Colter. In the Anthony decisions, the government's experts considered as part of his request for restitution, a collective harm caused by multiple people. And that's what this court found as error. The situation in Colter is much different. Mr. Colter is solely responsible for the harms that are caused to Doe 1 and Doe 2. Well, he's solely responsible for harms caused to some harms caused to them, but that they're hard to determine what the harms, the level of the harms, because there were pre-existing traumas. Isn't that the isn't that the rub? There are in the record for this case, there is some there is some discussion about prior traumas that existed prior to the sex trafficking or different from the sex trafficking. I think it's important to emphasize, and this came up during the defendant's opening argument, that Dr. Misser found that the trauma that he was analyzing was not just that Mr. Colter was not just a cause, he was the cause. It is in his report, Dr. Misser concluded, and this is discussed in the government's brief, looking at Doe 1, for example, that she suffered from PTSD, that that was not a pre-existing condition prior to the sex trafficking. There's ample evidence in the record that Doe 1 discusses that she suffers from sleeplessness, she has extreme anxiety and fear, she has flashbacks to the sex trafficking when she goes by hotels. She's afraid for her life to even leave the house. She wears a wig in public because she is extremely afraid of being identified by Mr. Colter or his associates, and they may come to harm her. That is a psychological trauma that she is suffering, and that's what Dr. Misser was analyzing. Can you help us? I know Dr. Misser's report and testimony is in the record, but in the briefs, neither party says with any specific references to the record about the statements that seem to be pretty important here from Dr. Misser, because your opposing counsel just said that his testimony was that Mr. Colter's conduct was a cause of the harm, and you just said it was the cause of the harm. Those are different, and they may make all the difference in the case, but neither party presented us record citations for those. Do you happen to have those? Yes. So in page 5 of the government's brief, page 4 and 5, in the background facts of the statement of the case, the government discusses Dr. Misser's expert reports, and specifically on page 5, the government cites to volume 2 of the record at page 251 through page 253, where Mr. Misser states that Del One suffered from PTSD, severe depression, and dysthymia, and that these, quote-unquote, conditions, excuse me, quote, these conditions were not pre-existing before her sex trafficking were therefore caused by it, end quote. So the direct quote, was that in his testimony as well about the cause? That particular quote comes from his expert report, but he testified to that as well in his testimony. Okay. I mean, speaking of testimony, in the government's brief too, we discussed some of the statements from his testimony, the evidentiary hearing that the court held in this case, and the language I believe that he used was that there was a direct nexus between the sex trafficking by Mr. Coulter and the conclusions that he was presenting to the court in support of restitution. So this was something that obviously he was thinking about in the course of his analysis. He was aware of the prior trauma for Del One, for example. There was some evidence presented that she had sought psychiatric treatment based on being molested by a family member at an early age in her life. He factored that into his analysis. I mean, the PTSD, I think, is a really good example of this. The PTSD is very specific to the sex trafficking. She did not report symptoms of PTSD related to any other further incident. In her mind, she said that when she would go to sleep, she would have nightmares of being sexually abused by Mr. Coulter. She would have nightmares of being sex trafficked by Mr. Coulter. And so I think that there is a very clear nexus, and I think that the but-for causation standard is clearly met when you look at the facts in that context. Can I ask about the amount of the restitution award? It seems that district court here, and I can imagine a lot of district courts, may struggle with the statutory language about projected losses, those that are reasonably projected, because obviously you're trying to predict any financial needs in the future. So how should a sentencing court be thinking about determining what are the proper amounts for eligibility for loss into the future when the government's evidence seems to say for life, and obviously none of us really can predict our own futures, but when you're looking out, I think in his report, 59 years and some, the district court said, well, that's too speculative. Now, how should district court be thinking about projecting these reasonably projected losses into the future? The TVPRA is somewhat unique, as opposed to other types of restitution. You know, most types of criminal restitution are backward looking. It's, you can see how much money was stolen, how much harm was caused in the past. But here we have a direct statutory mandate that we must look forward, and the court must compute reasonably projected costs that are reasonably projected to be incurred in the future, including medical services leading to physical, psychiatric, and psychological care. That is a requirement that the court must do, and so it does present challenges. But the court, it's within the scope of what the court is required to do in these types of cases for sex trafficking cases. And I think that the way that the burden is met is by presenting expert evidence, by calling witnesses like Dr. Misser, who is a licensed clinical psychologist, who has a lot of experience in dealing with these types of cases. And he was able to present his learned opinion to the court about, for these types of cases, what is going to be required in the future to address the harms. And he broke it down into several categories. Broke it down into medication that would be required, psychiatric services, and psychological services. But the court departed from his recommendation, and we don't know why. I would agree that the district court did not articulate in its order the specific reasons why it chose 10 years for certain categories. You know, for, as noted in our brief, for three of the categories, the court granted them in full. They were either 10 years or less of recommended services. But those other three categories that were recommended for a lifetime, those were limited down to 10 years. And there's not a specific articulation by the court for that. I would add, though, that Dr. Misser, in his expert reports, discusses the length of, his recommended lengths of services in some detail. And there's also a fairly extended discussion at the evidentiary hearing about why did he choose certain times over other times? And so I think the district court, in fashioning its award, was certainly aware of those facts. And that was part of the record that it considered when it gave its order of restitution. Yeah, but that's really hard for us to review. I mean, that makes us speculate as to what the district court relied on. I think this goes to Judge Federico's question about the difficulties of applying the TVPRA and looking at future estimated costs. What the district court did say is that it found good basis, good factual basis in the record presented before it to award medical services and medical costs up to 10 years. That beyond 10 years, it just, it did not feel in its discretion that there was enough in the factual record to support that. So that is part of the record. And I think that... Yeah, I mean, but then, I mean, that's evidence that the 100, that lifetime is too long. But it's not evidence that 10 years is good. It's not, it's not an explanation of why, it's an explanation of why he rejected a lifetime, not why he relied on 10 years total. In the statutory language, it does say reasonably projected. And so I think that that does require the district court to use its reason and make reasonable decisions based on the court's own experience with these types of cases. I also think there's also case law that restitution in this area and others doesn't have to be calculated with mathematical precision. I do think that there is some room for the district court to apply its discretion and fashion an award that it feels that it's appropriate under the circumstances. And the United States in the proceedings below did recommend that the court adopt restitution for that full period. And I think that that is still supported by the record. The government's not appealing that decision here. But if this court were to find that there was enough evidence for a lifetime of medical services and treatment, there wouldn't be a basis to reverse the court below on that. Essentially, the defendant's request that the court award zero dollars, I think, is certainly not an outcome that's supported by the record in this case. Certainly as to those three categories, but I think even for the three categories that were lifetime recommendations that were limited back, there is, I don't think it's accurate to say that there is, you know, nothing in the record that could possibly support those numbers. You know, the district court below, in both in finding an award, well, the district court below, you know, found that the government had proven by a preponderance the evidence that the but-for causation standard was met and used its discretion to, you know, fashion an award that was in compliance with the TVA-PRA statutory mandate. You know, at this time the government would ask that this court affirm the district court's order and I'm happy to answer any further questions at the panel. Thank you, counsel. Thank you. The government spent a lot of time talking about DOE-1's PTSD symptoms and the fears that DOE-1 had based on this diagnosis of PTSD. There, the government is correct that Dr. Massar said the PTSD was new, that that was due solely to the acts of defendant. However, that was not the only mental health issue with which DOE-1 was diagnosed. And in addition, DOE-2 was not diagnosed in that same way. There was no mention during the government's argument about that because there isn't a record for that. And so even if the group therapy, which was directed solely at PTSD, is substantiated by, you know, that testimony, the rest of the services recommended by Dr. Massar are not. And, but more importantly for the but-for causation argument, even if there were some new diagnoses based on defendant's acts, Dr. Massar failed to differentiate that PTSD from other diagnoses such as major depression and anxiety of DOE-1 and or DOE-2. And that's the requirement of the Anthony cases that Dr. Massar failed to meet. So based on that, but-for causation was not established in this case. I also want to mention briefly... Let me throw this out at you real fast. I don't mean to take up all your time, but at least as to one of the victims, he says beneath that major depression too, in my opinion, her symptoms indicate a longer standing but subtler mood condition, dysthemia, which carries with it feelings of lower self-esteem and ongoing worthlessness and hopelessness. In my opinion, based on her victim impact statement comments, these conditions were not pre-existing before her sex trafficking and therefore caused by it. So he did make some pretty strong statements about these conditions being caused by the trafficking. PTSD and dysthemia, Your Honor, I believe that he was saying they were a cause. Yes. Yes. No, I think he said he would have said those were the cause because he said they were not pre-existing. Yes, Your Honor. Fair enough. But again, there were other mental health issues that he failed to differentiate and explain why this treatment was justified solely by defendant's acts and not by other factors. With that, defendant would ask that the court vacate the order and remand for an entry of order of no restitution. Thank you, counsel. Excused and the case is submitted.